IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JIMMY L. BROWN                                                                                    PLAINTIFF

v.                                          Civil No. 4:21-cv-4040

ANGELA GAMMAGE                                                                              DEFENDANT

## ORDER

Before the Court is the Report and Recommendation filed March 24, 2022, by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. (ECF No. 22).  Judge Bryant recommends that the Court grant Defendant Angela Gammage's motion to dismiss (ECF No. 17) and dismiss this case with prejudice.  Plaintiff Jimmy L. Brown objected.  (ECF No. 25).  The matter is ripe for consideration.

### I.  BACKGROUND

On July 7, 2021, Plaintiff filed an amended complaint, asserting claims pursuant to 42 U.S.C. § 1983.  Plaintiff alleges in relevant part that, on June 6, 2018, he called Walmart's customer service telephone line and was told that Walmart had a policy giving employees discretion to check customers' receipts as they leave the store.  On November 23, 2018, Plaintiff was shopping at a Walmart in Hope, Arkansas.  When Plaintiff was leaving the store, an employee asked to check his receipt and he refused to let her do so.  After an exchange with several Walmart employees, Plaintiff asked them to call the police, which they did.

Defendant, a police officer, responded to the call.  She asked Plaintiff to show his receipt to the employees and he refused.  She then asked to see Plaintiff's driver's license to verify his identity and he refused.  She told him that he would be arrested for shoplifting if he refused to

show his receipt and for obstruction of governmental operations if he refused to produce his identification.

Ultimately, Plaintiff showed Defendant his driver's license and showed his receipt to the Walmart employees. Defendant used Plaintiff's driver's license to run a warrant check. Plaintiff was then given back his driver's license and receipt, and he left Walmart with his purchased goods. He was not arrested or cited.

Plaintiff later filed this section 1983 case against Defendant, Walmart, and various Walmart employees and executives, seeking $50 million in compensatory and punitive damages. The Court dismissed Plaintiff's claims against the Walmart defendants because they were not state actors, so only Plaintiff's claims against Defendant remain. Plaintiff appears to allege that Defendant unlawfully seized him in violation of the United States Constitution by preventing him from leaving Walmart, requesting his driver's license, and checking whether he had outstanding warrants.[1]

On February 21, 2022, Defendant filed a motion to dismiss, arguing in relevant part that this case should be dismissed for failure to state a claim upon which relief can be granted. Specifically, she contends that she is entitled to qualified immunity on the individual-capacity claim against her and that Plaintiff failed to allege sufficient facts to state a cognizable official-capacity claim. On March 3, 2022, Plaintiff filed a separate motion seeking dismissal of Defendant's motion to dismiss.[2]

---

[1] Plaintiff also alleges another incident occurring at Walmart on June 4, 2018, where he purchased items, left the store, went back into the store with his bagged items, and purchased additional items. Plaintiff then took his purchased items into the public restroom and, after exiting, went to purchase more items. An employee asked to check his receipt as he was leaving the store. Plaintiff refused, and after a lengthy exchange, an employee went to the cash register he used and printed copies of his receipts to verify his purchases. Defendant was not alleged to have anything to do with that incident, so the Court will not consider it for purposes of this order.

[2] Defendant and Judge Bryant construed that motion as a response to Defendant's motion to dismiss.

On March 24, 2022, Judge Bryant issued the instant Report and Recommendation, finding that Defendant is entitled to qualified immunity and recommending that the Court grant Defendant's motion and dismiss this case with prejudice.  Plaintiff objects.

## II.  DISCUSSION

The Court may designate a magistrate judge to hear pre- and post-trial matters and to submit to the Court proposed findings of fact and recommendations for disposition.  28 U.S.C. § 636(b)(1).  Within fourteen days of receipt of a magistrate judge's report and recommendation, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* W.D. Ark. Local Rule 72.2(VII)(C).  After conducting an appropriate review of the report and recommendation, the Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).

"[T]he specific standard of review depends . . . upon whether or not a party has objected to portions of the report and recommendation."  *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018).  Generally, "objections must be timely and specific" to trigger *de novo* review.  *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990).  The Court applies a liberal construction when determining whether *pro se* objections like Plaintiff's are specific.  *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995).  A "clearly erroneous" standard of review applies to the portions of a report and recommendation to which no specific objections are made.  *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996); *see also* Fed. R. Civ. P. 72 advisory committee's note, subd. (b) (stating that, in the absence of objections, the reviewing court should ensure there is "no clear error on the face of the record").

Judge Bryant reasons that Defendant is entitled to qualified immunity. Judge Bryant finds that Defendant responded to a call from a citizen reporting a possible crime and, after she arrived on the scene, Plaintiff was uncooperative with her requests. Judge Bryant finds further that Defendant informed Plaintiff that he could be arrested if he refused to comply with her instructions. After Plaintiff complied, he was allowed to leave with his possessions and was not arrested or cited. Judge Bryant finds that Plaintiff's allegations do not make out a constitutional deprivation and that no clearly established law existed at the time prohibiting the conduct at issue in this case. Thus, Judge Bryant recommends that the Court dismiss this case with prejudice.[3]

Plaintiff objects. He argues that Defendant violated his Fourth Amendment rights by detaining him and preventing him from leaving Walmart unless he produced his identification and receipt. He argues that his Fourth Amendment right against being unlawfully seized was clearly established such that no reasonable police officer would have made a shopper produce a receipt when no law requires production of a receipt to leave a store. He also argues that Defendant saw other shoppers leaving the store without showing their receipts, which further supports his claim that a reasonable officer would not have required Plaintiff to produce his receipt. Thus, he concludes that Defendant had no evidence or reasonable suspicion to justify detaining him, which thereby violated his constitutional rights.

When deciding a Rule 12(b)(6) motion like this one, the Court must accept as true all the complaint's factual allegations and draw all reasonable inferences in Plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). However, the Court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint's factual allegations need not be detailed but must be sufficient to "raise a

---

[3] Judge Bryant did not address Defendant's alternative argument for dismissal based on insufficient service of process. The Court also gives no opinion on that argument.

right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. *Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims made. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Section 1983 provides a mechanism by which aggrieved plaintiffs may sue a state actor for a violation of their constitutional rights. *See Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987). However, the doctrine of qualified immunity generally shields public and government officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[D]efendants seeking dismissal under Rule 12(b)(6) based on . . . qualified immunity must show that they are entitled to qualified immunity on the face of the complaint." *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (cleaned up).

Qualified immunity requires a two-pronged analysis: "whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017). The Court may start with either prong and may end the analysis if either is not met. *Id.* The Court will begin with whether Plaintiff's allegations, taken as true for purposes of this order, make out a plausible claim for a constitutional deprivation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (remarking that it "often may be difficult to decide whether a right is clearly established without deciding precisely what the existing constitutional right happens to be"). Judge Bryant found that they did not. The Court agrees.

Plaintiff contends that Defendant unlawfully detained him, in violation of his Fourth Amendment rights. To conduct a temporary investigative detention, a police officer only needs reasonable suspicion of criminal activity, based on the totality of the circumstances. *See Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Reasonable suspicion requires "at least some minimal level of objective justification." *De La Rosa v. White*, 852 F.3d 740, 744 (8th Cir. 2017).

To determine whether Defendant had reasonable suspicion to conduct a temporary investigative detention, otherwise known as a "*Terry* stop," the Court looks at the information Defendant possessed at the time. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). The Court views Defendant's "observations as a whole, rather than as discrete and disconnected occurrences." *Waters v. Madson*, 921 F.3d 725, 736 (8th Cir. 2019). The "determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 125. If Defendant "lacked reasonable suspicion and thus conducted an unlawful *Terry* stop, she may nonetheless be entitled to qualified immunity if she had arguable reasonable suspicion—that is, if a reasonable officer in the same position could have believed she had reasonable suspicion." *Waters*, 921 F.3d at 736.

In *Waters v. Madson*, a factually similar case, the Eighth Circuit found reasonable suspicion present when police officers responded to a lumberyard in response to an employee's 911 call that a customer refused to comply with a company policy of letting an employee verify his purchase before the customer left. *Id.* at 736. The officers arrived and the customer refused to identify himself to the officers or to allow anyone to verify his purchase. *Id.* The Eighth Circuit concluded that, at that point, the officers had a "particularized and objective" basis giving them reasonable suspicion, justifying them detaining the customer for up to twenty minutes while they determined his identity and allowed employees to verify his purchase. *Id.* at 736-37.

The Court finds *Waters* instructive.  Plaintiff alleges that he knew Walmart had a policy giving its employees discretion to verify customers' purchases by checking their receipts as they left the store.  During one shopping trip, a Walmart employee asked to check Plaintiff's receipt and he refused to cooperate.  Like in *Waters*, Defendant arrived in response to a citizen calling the police about a dispute involving a customer who refused to let employees verify his purchase as he left the store.  Defendant was allowed to draw reasonable suspicion "based on commonsense judgments and inferences about human behavior."  *Wardlow*, 528 U.S. at 125.  Plaintiff "exhibited suspicious behavior before [Defendant] even arrived on the scene by failing to allow store employees to verify his purchase pursuant to a [known] policy, and he continued to exhibit suspicious behavior [after Defendant arrived] by failing to identify himself or comply with [Defendant's] instructions."  *Waters*, 921 F.3d at 738.  Like in *Waters*, under the totality of the circumstances, Defendant had reasonable suspicion to detain Plaintiff based on the information she possessed at the time.[4]  *Id.* at 736-37.

The analysis cannot end there, though.  "A *Terry* stop may become an arrest, requiring probable cause, if the stop lasts for an unreasonably long time or if officers use unreasonable force."  *United States v. Newell*, 596 F.3d 876, 879 (8th Cir. 2010) (internal quotation marks omitted).  Plaintiff does not allege that Defendant used force on him, so the Court focuses on whether the detention was unreasonably long.  Officers must use "the least intrusive means of detention and investigation . . . reasonably necessary" to conduct a stop, *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999), but they may "take any measures that are reasonably necessary to protect their personal safety and to maintain the status quo during the

---

[4] At worst, Defendant had arguable reasonable suspicion.  However, the *Waters* court explicitly rejected the need to discuss arguable reasonable suspicion, instead finding the case's facts presented reasonable suspicion.  *See Waters*, 921 F.3d at 736-37.

course of the stop." *United States v. Sanford*, 813 F.3d 708, 713 (8th Cir. 2016) (per curiam) (internal quotation marks omitted).

Plaintiff does not allege the length of his encounter with Defendant but based on his account of the exchange (ECF No. 5, pp. 11-14), it does not appear that Defendant caused an unreasonable delay. *Cf. Waters*, 921 F.3d at 737 (noting that up to a twenty-minute detention is "reasonable when the police acted diligently and [the detainee] contributed to the delay"). Rather, "the encounter only lasted as long as it did because [Plaintiff] . . . refused to cooperate with the police investigation by failing to obey legitimate requests to identify himself." *Id.*

Plaintiff argues that Defendant had no basis to use his driver's license to check whether he had outstanding warrants. Defendant, though, did not know Plaintiff's background and witnessed his evasive and uncooperative behavior. *See United States v. Bailey*, 417 F.3d 873, 877-78 (8th Cir. 2005) (stating that evasiveness contributes to "a reasonable and particularized suspicion that criminal activity may be afoot"). It was reasonable for her to run a warrant check based on her observations and the information available to her at the time. *See United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001) (stating that, during a *Terry* stop, an officer may ask a suspect for identification and run computer searches to determine if the suspect has a criminal history or outstanding warrants); *see also Sanford*, 813 F.3d at 713 (authorizing officers to "take any measures that are reasonably necessary to protect their personal safety and to maintain the status quo during . . . the stop"). Based on Plaintiff's allegations, the Court finds no unreasonable delay, and thus, Defendant did not prolong the detention so long that it became an arrest. Defendant's brief detention of Plaintiff was not constitutionally impermissible.[5]

---

[5] To the extent that Plaintiff argues that Defendant detained him in retaliation for him exercising his First Amendment rights, that claim fails for the same reasons discussed above. *See Waters*, 921 F.3d at 741-42 (holding that the presence of reasonable suspicion for a temporary detention defeats a First Amendment retaliation claim).

Accordingly, Plaintiff has not alleged facts to make out a plausible claim that Defendant violated his constitutional rights. Defendant is entitled to qualified immunity. Based on this finding, the Court need not determine whether an implicated right was clearly established at the time. Plaintiff's individual-capacity claim will be dismissed with prejudice. *See Moore v. Briggs*, 381 F.3d 771, 775 (8th Cir. 2004) (concluding that the defendants were entitled to qualified immunity and remanding the case with directions to dismiss with prejudice).

However, the Court respectfully departs from the Report and Recommendation to the extent that it recommends dismissal with prejudice of Plaintiff's official-capacity claim based on qualified immunity. The doctrine of qualified immunity only shields officials acting in their individual capacities. *See Brandon v. Holt*, 469 U.S. 464, 472-73 (1985); *VanHorn v. Oelschlager*, 502 F.3d 775, 778 (8th Cir. 2007). Plaintiff's official-capacity claim cannot be defended against with qualified immunity. *Brandon*, 469 U.S. at 472-72.

Defendant argued in her motion to dismiss that the official-capacity claim against her can also be dismissed for failure to state a claim because Plaintiff has not alleged facts to establish municipal liability. The Court agrees.

"[I]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To state an official-capacity claim upon which relief may be granted, Plaintiff must allege "that a constitutional violation was committed pursuant to an official custom, policy, or practice of [Defendant's employing] governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Plaintiff has alleged no facts concerning an unconstitutional policy, practice, or custom of the City of Hope, Arkansas, that caused or contributed to an alleged constitutional violation. Thus,

Plaintiff fails to state an official-capacity claim upon which relief can be granted. His official-capacity claim will be dismissed without prejudice. *See Smith v. Lt. Adams*, No. 4:14-cv-4126-SOH, 2016 WL 918042, at *1 (W.D. Ark. Mar. 10, 2016) (holding that "dismissal [of an official-capacity claim] without prejudice is more appropriate . . . since it is conceivable that Plaintiff could, at a later date, sufficiently allege a custom or policy.").

### III. CONCLUSION

For the above-stated reasons and upon *de novo* review, the Court overrules Plaintiff's objections and adopts the Report and Recommendation (ECF No. 22) insofar as it recommends that Defendant is entitled to qualified immunity and Plaintiff's individual-capacity claim should be dismissed with prejudice. The Court will depart from the Report and Recommendation (ECF No. 22) to the extent that it recommends dismissal of Plaintiff's official-capacity claim with prejudice based on qualified immunity. That claim will instead be dismissed without prejudice for failure to state a claim upon which relief can be granted.

Defendant's motion to dismiss (ECF No. 17) is hereby **GRANTED**. Plaintiff's individual-capacity claim is **DISMISSED WITH PREJUDICE**. Plaintiff's official-capacity claim is **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED**, this 12th day of April, 2022.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge